23 C.C.P.A.(Patents)

## In re MULLIGAN.

### Patent Appeal No. 3651.

Court of Customs and Patent Appeals.
June 8, 1936.

Hugh Keneipp, of Washington, D. C. (Arthur Worischek, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

All the claims of appellant's application for a patent for improvements in method of preserving food, such as milk, etc., were denied by the Primary Examiner of the United States Patent Office. Upon appeal to the Board of Appeals, his decision was affirmed. Appeal has been taken here from the decision of the Board as to rejected claims 1 to 8, inclusive, of which claims 1 and 8 are illustrative, and follow:

"1. The method of preserving milk and the like which consists in subjecting it to undamped ultrasonic vibrations."

"8. The method of preserving milk and the like by inhibiting bacterial growth which consists in subjecting it to undamped mechanical vibrations of the order of 93 kilocycles or more for periods of the order of 30 seconds upwards."

The references relied upon by the Patent Office tribunals are: Hering, 1355476, October 12, 1920; Loomis et al., 1734975, November 12, 1929; Nyrop (Danish) 41285, December 4, 1929; Nyrop (Danish) 41464, January 3, 1930; Rowley (Australian) 1592, July 28, 1931; "Sounds That Burn," by R. W. Wood, Scientific American of March, 1928, pp. 201–204, inclusive.

Appellant assigns the following four reasons of appeal:

"1. The Board of Appeals erred in basing affirmance of the Examiner's rejection on points not involved in the appeal.

"2. The Board of Appeals erred in affirming the Examiner's rejection on the disclosures of Danish patents to Nyrop No. 41,285 and No. 41,464.

"3. The Board of Appeals erred in affirming the Examiner's rejection on the disclosure of Danish patents to Nyrop No. 41,-285 and No. 41,464 as supplemented by other disclosures.

"4. The Board of Appeals erred in affirming the Examiner's rejection of all claims in view of prior art not relied on by the Examiner."

After the Board's first decision, rendered February 13, 1935, the appellant petitioned for rehearing, alleging that he was taken by surprise because the Board's decision affirmed that of the Examiner upon grounds different from those on which said rejection was based. Appellant further alleged that his claims had never been rejected upon the grounds applied by the Board, and that therefore he had not had a hearing with reference thereto.

The Board rendered a second decision, March 8, 1935, and the decision is of such importance and refers to the grounds of rejection on the part of the Examiner in such detail that we think it proper to here quote it:

"Appellant has petitioned for a rehearing because the rejection is alleged to have been affirmed on a ground different from that used by the examiner. It is alleged that the examiner rejected the claims in each instance on the Danish patents and that the claims have never been rejected on any other ground than direct anticipation. It is said to be believed that certain discussion in the examiner's statement has given rise to the idea that applicant's claims were also rejected on the ground that applicant's method is an obvious substitution of an equivalent. It is argued that in this way applicant is denied a patent on a ground on which he has never been heard.

"On page 6 of his statement the examiner said:

" 'The Scientific American article is very interesting in its disclosure of the use of ultra-sonic waves to destroy small organisms (just as Hering indicates in connection with wave frequencies of lower value). Either this patent taken alone or in .conjunction with the Hering and/or Danish patents is deemed to preclude any inventive thought residing in employing radio frequency or ultra-sonic waves to effect the preservation of liquids such as milk.'

"This statement of the examiner in effect seems to say that the Scientific American article taken in conjunction with the Hering patent is deemed to preclude any inventive thought residing in employing radio frequency or ultra-sonic waves to effect the preservation of liquids such as milk. The quoted statement of the examiner further says that the Scientific American article taken in conjunction with the Danish patents is deemed to preclude any inventive thought residing in the set up of applicant. The statement further says that the Scientific American article taken in conjunction with the Hering and Danish patents precludes inventive thought residing in the set up stated. Finally, this quoted statement from the examiner seems to say that the Scientific American article taken alone is deemed to preclude inventive thought residing in this specified set up.

"In our decision it was stated that in view of the disclosure of the Danish patents for the same purpose of sterilization of liquids it is our view that it would not amount to invention to employ the methods of Hering or the Scientific American article for producing the same results by a specifically designated high frequency operation such as those claimed. It appears that these rejections in the statement of the examiner do in effect constitute a rejection on a combination of references which tend to show among other things that applicant's method of producing high frequency oscillations is an obvious substitution of the method of producing the high frequency oscillation of the Scientific American article for those of the Danish patents.

"If appellant regarded these statements as a new ground of rejection he had ample opportunity to and did, in effect, elect in accordance with the practice laid down in the case of Ex parte Mevey, C.D.1891, page 115, to continue the prosecution of the appeal instead of returning to the primary examiner for further prosecution. In view of the record, no ground for granting a rehearing is apparent.

"For the reasons indicated the petition is denied."

We think the Board's statement as to the manner in which the Examiner applied the references and his grounds of rejection is an accurate one. The Board pointed out that, if the appellant regarded the statements in its decision as a new ground of rejection, "he had ample opportunity to and did, in effect, elect in accordance with the practice laid down in the case of Ex parte Mevey, C.D.1891, page 115, to continue the prosecution of the appeal instead of returning to the primary examiner for further prosecution." The Board concluded that the applicant had elected to have a reconsideration by the Board, rather than to have the matter again submitted to the Examiner. We think the record shows that the

said reconsideration given by the Board meets the requirements of rule No. 139 of the rules of practice of the United States Patent Office, the pertinent portion of which reads: "139. * * * The applicant may waive the right to further prosecution before the primary examiner and have the case reconsidered by the board of appeals upon the same record. Where request for such reconsideration is made the board of appeals shall render a new decision which shall include all grounds upon which a patent is refused. The applicant may waive reconsideration by the board of appeals and treat the decision, including the added grounds for refusal of a patent given by the board of appeals, as a final decision in the case."

It is true that the Board denied the petition for rehearing, after it had given the questions raised in appellant's petition due consideration and after having again stated the grounds of rejection. Whether or not it was proper for the Board, under such circumstances, to have closed its second decision with the statement, "For the reasons indicated the petition is denied," is not raised here by any reason of appeal filed by appellant in this cause.

■ In view of the above considerations, we hold that appellant's first and fourth reasons of appeal are without merit. In Re Benjamin Greenfield, 40 F.(2d) 775, 779, 17 C.C.P.A. (Patents) 1217, we used the following language which applies aptly to the instant issue: "In so far as the matter of reconsideration by the Board is concerned, we should feel that the fact that in reconsidering the case there was not an oral rehearing, does not, of itself, sustain the contention of appellant that the rule was not complied with. When an applicant waives the right to have the claim referred back to the Examiner and accepts reconsideration by the Board, the rule does not make a rehearing mandatory; it only requires reconsideration 'upon the same record' and the Board may exercise its sound discretion as to the procedure it will follow in this reconsideration, but in the instant controversy, the decision of the Board upon reconsideration does not seem to have cured a defect in its first decision relative to claim 56."

As to appellant's second and third reasons of appeal, we are of the opinion that the Board, although in slightly different language, affirmed the Examiner's rejection of the appealed claims on substantially the same grounds as the grounds relied upon by the Examiner. In view of the quoted decision of the Board, explaining the references of record, we do not regard it as necessary here to discuss them further. It was the opinion of the Board, and, we think, the opinion expressed by the Examiner, that the Scientific American article, taken in conjunction with the Danish patents, was deemed to "preclude any inventive thought residing in the set up of applicant," and that the said Scientific American article, taken in conjunction with the Hering patent and the Danish patents, precludes inventive thought residing in appellant's claims. The Board and the Examiner were also of the opinion that the Scientific American article alone sufficiently negatived invention residing in the claims.

■ It is our view that all the elements of the claims relied upon by appellant to constitute patentability are shown in the prior art in the manner as is suggested in the Board's decisions. Appellant, in this court, has stressed the contention that the Danish patents do not disclose his alleged invention because all the elements are not shown therein, and for the further reason that in the patents there are no drawings or description of the apparatus.

■ The rule as to the limitation which the Patent Office and the courts place upon foreign patents, where the showings therein are relied upon singly or in connection with other prior art as the basis for rejection of claims, is well settled. This subject matter has been fully discussed in many well-considered cases. In Re Cross, 62 F.(2d) 182, 183, 20 C.C.P.A. (Patents) 710, we said:

"We know of no rule relating to foreign patents when used as references which requires that every element and feature of the claims in the patent application shall be clearly shown in such foreign patent. The rule to which appellant obviously refers and which has been frequently laid down by this and other courts is to the effect that a foreign patent may be a valid reference only for all that it clearly discloses. In re Dann, 18 C.C.P.A. (Patents) 1031, 47 F.(2d) 356. In the Dann Case, where the feature relied upon in the foreign patent was only indefinitely shown in the drawings and not referred to in the specifications, it was held that the feature was not clearly disclosed in the foreign patent, and the patent was not, therefore, a proper reference.

"If, however, the foreign patent does clearly disclose a certain feature of the

claimed invention, it may be used in connection with other references to negative patentability of the claims. In re Holst, 18 C.C.P.A. (Patents) 748, 44 F.(2d) 873."

We find no error in the Board's decision, and the same is affirmed.

Affirmed.